IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WEIRTON MEDICAL CENTER, INC., | No. |
| Plaintiff, | |
| vs. | |
| MICRO FOCUS (US), INC., | |
| Defendant. | |

## COMPLAINT

AND NOW comes Plaintiff, Weirton Medical Center, Inc., by and through its counsel, Saul Ewing Arnstein & Lehr LLP, and respectfully submits this Complaint against Defendant, Micro Focus (US), Inc.:

**I.   PARTIES**

1. Plaintiff, Weirton Medical Center, Inc. ("Weirton Medical"), is a community nonprofit hospital incorporated under the laws of West Virginia, with its principal place of business at 601 Colliers Way, Weirton, West Virginia 26062.

2. Weirton Medical operates four healthcare facilities within the Western District of Pennsylvania in Robinson Township, Oakdale-Imperial, McDonald, and Paris, Pennsylvania, with thirteen (13) multi-specialty medical practices located in those facilities, and serves patients throughout West Virginia, Ohio, Pennsylvania, and beyond.

3. Defendant, Micro Focus (US), Inc. ("Micro Focus"), is a Delaware corporation and international provider of software and related services, with its principal place of business at 700 King Farm Blvd., Suite 400, Rockville, Maryland 20850.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This Court is a proper venue pursuant to 28 U.S.C. § 1391(b) because Micro Focus conducts continuous business operations in this District, Weirton Medical maintains multiple business locations in this District, and the events or omissions giving rise to the claims set forth in this action occurred in this District and/or had significant impacts on Weirton Medical's business operations in this District.

## III. FACTUAL BACKGROUND

### A. The Attachmate Software Purchase Order

6. On or about October 12, 2004, Weirton Medical agreed to the installation of certain licensed software from Attachmate Corporation ("Attachmate"), including accompanying maintenance and support services to be provided by Attachmate to the hospital.

7. The Attachmate software, at its basic level, assisted in the functional networking of Weirton Medical's computer systems within and across its various locations.

8. Weirton Medical obtained the Attachmate software through a one-page Purchase Order, bearing Purchase Order No. 5079.  ("Purchase Order" attached as **Exhibit "1"**).

9. There were no other express terms or conditions associated with the Purchase Order, and Weirton Medical otherwise did not agree to any other express terms or conditions.

10. Thereafter, Weirton Medical installed and used the Attachmate software.

11. Weirton Medical used the Attachmate software on a number of devices, and the number of Attachmate software licensed used by Weirton Medical increased over time as Weirton Medical's operations expanded.

12. Periodically, the parties would discuss the number of Attachmate software licenses actually in use by Weirton Medical across the hospital's footprint, and the parties would agree on an appropriate true-up payment related to the number of such licenses actually in use.

B. **Micro Focus Attempts to Unilaterally Impose New, Significantly Burdensome Terms and Conditions on Weirton Medical**

13. In 2014, Micro Focus acquired Attachmate and, apparently, assumed the maintenance of the Attachmate software at Weirton Medical.

14. Even after the Micro Focus acquisition of Attachmate, from 2014 until late 2017 or early 2018, Weirton Medical continued to use the Attachmate software as it had since the original 2004 Purchase Order. In other words, the parties' course of dealings, first settled by Weirton Medical and Attachmate, persisted following Micro Focus's appearance.

15. Then, suddenly on one of the periodic true-up occasions, in late 2017 or early 2018, *approximately thirteen (13) years after the Purchase Order and after thirteen (13) years of a course of dealings between the parties*, Micro Focus sent Weirton Medical a new, never before seen Software License Agreement. ("License Agreement" attached as **Exhibit "2"**).

16. The License Agreement itself covered four (4) boilerplate, single-spaced pages and included overly burdensome and unconscionable purported terms including, for example, imposition of the laws of the State of Washington (thousands of miles away from the hospital), and an attorney fee shifting provision for the prevailing party in disputes.

17. The License Agreement also alleged to incorporate additional pages of terms and conditions, including a narrow limited warranty related to the software, a narrow exclusive remedy provision, and broad exclusions of all other warranties.

18. Weirton Medical never assented to or otherwise accepted the License Agreement or any of its related provisions.

19. The License Agreement is otherwise unenforceable.

20. To the contrary, the parties always performed pursuant to their previous understanding and course of dealings established over the preceding thirteen years.

### C. Micro Focus Later Attempts to Rely Upon the License Agreement to Force Weirton Medical to Pay an Additional $530,000 for Copies of Attachmate that Weirton Medical Never Used or Otherwise Benefited From

21. Not only did Micro Focus attempt to force the new and burdensome terms of the License Agreement on Weirton Medical, but the software provider further attempted to strong-arm Weirton Medical into paying an additional $530,530.56 "exclusive of any applicable taxes" due to an alleged "over-deploy[ment]" of the Attachmate software product. (See 1/2/18 4:45 p.m. Micro Focus demand e-mail, attached as **Exhibit "3"**).

22. Micro Focus asserted that Weirton Medical owed three separate components of penalties within this $530,530.56 figure:

   a. "[T]he list price for the over-deployed products";

   b. "[B]ack interest", apparently for six years at a rate of 12%, which is purportedly dictated by Washington state law on interest; and

   c. "[B]ack maintenance" charges for the alleged "extra licenses".

23. Micro Focus is apparently proceeding on a theory that Weirton Medical "over-deployed", but did not actually use, additional Attachmate software licenses.

24. In fact, Micro Focus agreed to forego any back maintenance charges because "Weirton Medical isn't currently supporting any of its Extra licenses." (Exhibit 3).

25. The alleged "Extra licenses" were not supported because Weirton Medical indeed was not actually using or benefitting from the same, even if there was some sort of over-deployment on the Weirton Medical computer network.

26. Instead, relying on the previously unseen and unilaterally imposed License Agreement, Micro Focus asserted that it was owed an unearned windfall of over $500,000 from Weirton Medical, a community non-profit hospital.

**D.    Weirton Medical Outsourced its Information Technology Needs to Other Parties**

27. For at least the past twenty (20) years, large third-party information technology and software companies, Siemens Medical Solutions USA, Inc. ("Siemens") and Cerner Health Services, Inc. ("Cerner"), have acted as the outsourced information technology ("IT") director for Weirton Medical.

28. Pursuant to this outsourcing of IT functions, these providers were responsible for deploying licensed software products of Weirton Medical, including the Attachmate system.

29. Specifically, Siemens and Cerner were responsible for maintaining maintenance and/or support agreements between Weirton Medical and Micro Focus, as well as "maintaining an up-to-date inventory of the desktop software applications and versions that are currently deployed" and a "software license inventory."

30. Accordingly, to the extent that any over-deployment of the Attachmate system actually occurred, the same was a result of the conduct or inactions of Weirton Medical's third-party IT providers, not Weirton Medical.

IV.     **CLAIMS FOR RELIEF**

**COUNT I – DECLARATORY JUDGMENT**
**Weirton Medical vs. Micro Focus**

31.     Weirton Medical incorporates the above averments as if stated more fully herein.

32.     As stated above, pursuant solely to the Purchase Order and a course of dealings thereafter, since 2004 Weirton Medical has used the Attachmate software product.

33.     There were no other express terms or conditions associated with the Purchase Order, and Weirton Medical otherwise did not agree to any such further terms or conditions.

34.     Periodically, the parties would discuss the number of Attachmate software licenses actually in use by Weirton Medical, and the parties would agree on an appropriate true-up payment related to the number of such licenses.

35.     Even from 2014 following Micro Focus's acquisition of Attachmate until late 2017 or early 2018, Weirton Medical continued to use the Attachmate software as it had since the original 2004 Purchase Order and pursuant to the parties' historical course of dealings.

36.     Then, on one of the periodic true-ups, in late 2017 or early 2018, *approximately thirteen (13) years after the Purchase Order and after thirteen (13) years of a course of dealings*, Micro Focus sent Weirton Medical a never before seen License Agreement.  (See Exhibit 2).

37.     Weirton Medical never assented to or otherwise accepted the License Agreement or any of its related provisions.

38.     The License Agreement is otherwise not enforceable against Weirton Medical.

39.     Additionally, Weirton Medical never agreed to compensate Micro Focus for software licenses allegedly over-deployed, but not actually used, by Weirton Medical.

40. Micro Focus attempted to force Weirton Medical to pay an additional $530,530.56 "exclusive of any applicable taxes" due to an alleged "over-deploy[ment]" of the Attachmate software product.  (See Exhibit 3).

41. This created an actual and ripe controversy between Weirton Medical and Micro Focus as to: (a) the enforceability of the License Agreement; and (b) more specifically, whether Weirton Medical agreed to compensate Micro Focus for Attachmate licenses deployed on the Weirton Medical computer system, but never actually used by the hospital.

42. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, Weirton Medical requests that the Court exercise its equitable power to determine an actual controversy between the parties regarding the enforceability (or unenforceability) of the License Agreement and whether Weirton Medical is responsible (or not responsible) to pay for Attachmate license deployed, but not used, by the hospital.

-8-

WHEREFORE, Plaintiff, Weirton Medical, respectfully requests a declaratory judgment against Defendant, Micro Focus, that the alleged License Agreement is unenforceable and that Weirton Medical is otherwise not responsible for the $530,530.56 related to an alleged over-deployment of the Attachmate software product, along with any further relief that this Court deems appropriate under the circumstances.

**JURY TRIAL DEMANDED**

Dated: <u>April 23, 2018</u>                                            SAUL EWING ARNSTEIN & LEHR LLP


By: <u>/s/ *Michael J. Joyce*</u>
Charles Kelly, Esq.
PA ID No. 51942
*Charles.Kelly@saul.com*
Michael J. Joyce, Esq.
PA ID No. 311303
*Michael.Joyce@saul.com*
One PPG Place, 30th Floor
Pittsburgh, PA 15222
Tel.: (412) 209-2500
Fax: (412) 209-2585

*Counsel for Plaintiff,*
*Weirton Medical Center, Inc.*